Lloyd J. Lowe v. Commissioner. William H. Andes v. Commissioner. Helen M. Andes v. Commissioner.
Lowe v. Commissioner
Docket Nos. 43972, 44049, 44227.
United States Tax Court
T.C. Memo 1955-150; 1955 Tax Ct. Memo LEXIS 187; 14 T.C.M. (CCH) 547; T.C.M. (RIA) 55150; June 14, 1955
*187 1. The Commissioner determined deficiencies in the income tax of the petitioners using the bank deposits method. The Commissioner also disallowed certain deductions and dependency credits and included as long-term capital gains in the taxable income of two of the petitioners for the year 1943 the full amount realized on the sale of their tractors and trailers. Held, petitioners failed to sustain their burden of proving error in the deficiencies as determined. 2. The Commissioner determined additions to tax for failure to file returns or, in one instance, a timely and properly executed return. Held, petitioners failed to prove that they were not liable for the additions to tax. 3. Held, the amount of the earned income credit to which two of the petitioners were entitled in 1943 is determined. 4. Held, the Commissioner failed to prove by clear and convincing evidence that any part of the deficiency of any of the petitioners in any of the taxable years was due to fraud with intent to evade tax. Held further, two of the petitioners are entitled to the benefits of section 6 of the Current Tax Payment Act of 1943. Thomas Clay Collier, Jr., Esq., for the petitioners. Charles R. Hembree, *188 Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of petitioners and additions to tax as follows: Addition
Addition
to tax
to tax for
Year
Deficiency
for fraud
delinquency
Lloyd J. Lowe
1939
$ 249.44
$124.72
$ 62.36
1940
481.89
240.95
1941
1,003.31
501.66
1942
1,047.67
523.84
1943
1,446.35
723.18
William H. Andes
1932
68.52
34.26
17.13
1933
262.42
131.21
65.61
1934
34.77
17.39
8.69
1936
100.63
50.32
25.16
1937
127.28
63.64
31.82
1938
449.30
224.65
112.33
1939
395.25
197.63
98.81
1940
313.30
156.65
1941
781.68
390.84
1942
1,008.69
504.35
1943
*
695.08
571.92
Helen M. Andes
1933
36.72
18.36
9.18
1934
32.40
16.20
8.10
1935
33.46
16.73
8.37
1936
33.70
16.85
8.43
1937
39.35
19.68
9.84
1938
45.36
22.68
11.34
1939
32.04
16.02
8.01
None of the petitioners appeared at the hearing and no briefs were filed in their behalf. Their contentions are set forth in numerous assignments of error contained in the petitions and the opening statement of their counsel. Both oral testimony and documentary evidence were offered in their behalf. The cases were consolidated for hearing. The issues *189 for decision are: 1. Whether respondent correctly determined deficiencies in the income tax of petitioners by using the bank deposits method, by disallowing certain deductions and dependency credits, and by including as long-term capital gains in the taxable income of two of the petitioners for the year 1943 the full amount realized on the sale of their tractors and trailers. 2. Whether petitioners are liable for additions to tax for failing to file a return for any of the taxable years prior to 1940 and whether the petitioner William H. Andes is liable for an addition to tax for the year 1943 because he failed to file a properly executed return for that year until September 15, 1944. 3. Whether the petitioners Lloyd J. Lowe and William H. Andes were entitled to earned income credits of more than $300 for the year 1943. 4. Whether respondent correctly determined that at least part of the deficiency of each petitioner in each of the taxable years was due to fraud with intent to evade tax so as to render them liable for additions to tax and deny two of the petitioners the benefits of section 6 of the Current Tax Payment Act of 1943. Findings of Fact Petitioners Lloyd J. Lowe, William *190 H. Andes, and Helen M. Andes (hereinafter referred to as Lloyd, William, and Helen, respectively) are individuals who resided in Gas City, Indiana, during all of the years in question. Lloyd now resides in Sanford, Florida, and William and Helen now reside in Orlando, Florida. William and Helen are husband and wife, and Lloyd and Helen are brother and sister. No Federal income tax returns were filed by William for the years 1932 to 1939, inclusive, by Helen for the years 1933 to 1939, inclusive, and by Lloyd for the year 1939. William and Lloyd filed individual returns for the years 1940 to 1943, inclusive, with the collector of internal revenue for the district of Indiana. William did not sign his original return for the year 1943, and he did not file an "amended return" for that year until September 15, 1944. The Gas City Transfer Company (hereinafter referred to as Gas City) during the years in question was an Indiana corporation with its principal place of business in Gas City, Indiana. Gas City was engaged in the trucking business. It became a common carrier in 1938 or 1939. Prior to that time it was a contract carrier. The principal commodities carried were glass and paper. Walter *191 Lowe, the father of Lloyd and Helen and the father-in-law of William, was the president of Gas City as well as its principal and, at least in 1943, its sole stockholder. Lloyd was the vice-president and Lola Lowe, the wife of Walter Lowe, was the treasurer. Helen was the secretary of Gas City until 1941, when she was succeeded by Martha May Morgan. In 1932 both Lloyd and William purchased certain truck-tractors and trailers from Gas City. During the years 1932 to 1943, inclusive, Lloyd owned three tractors and five trailers and William owned three tractors and three trailers. These tractors and trailers were leased by Lloyd and William to Gas City. The lessors and lessee were to receive 80 per cent and 20 per cent of the gross profits, respectively, and the lessors were to pay the expenses of operating the units. Most of the supplies used in the operation of the tractor-trailers owned by Lloyd and William were purchased from Gas City. These supplies were sometimes paid for by cash or check, but the usual procedure was for Gas City to deduct the cost of the supplies from the amounts due Lloyd and William as their share of the truck revenues. In 1943 neither Lloyd nor William received *192 rental income on their tractor-trailer units, but worked for Gas City on a straight salary basis. Lloyd and William did not file returns prior to 1940, and in the years 1940 through 1943 they reported no income from the operation of the tractor-trailer units. The only income reported in 1940, 1941, and 1942 were amounts which they denominated salaries received from Gas City, as follows: Year
Lloyd
William
1940
$2,397.36
$2,398.10
1941
2,945.00
2,869.40
1942
6,575.00
5,600.00
During the years in question William and Helen had a joint checking account and a joint savings account and Lloyd had a checking account in the Twin City State Bank, Gas City, Indiana. William and Helen also had a joint savings account in the Marion National Bank at Marion, Indiana. Lloyd and William made deposits in their respective bank accounts of checks received from Gas City, in addition to the checks reported as salary, and made unidentified deposits as follows: Lloyd
Unidentified
Checks from
Year
bank deposits
Gas City
1939
$8,790.83
1940
163.00
$7,616.10 *
1941
475.00
6,408.83
1942
3,311.27
William
Unidentified
Checks from
Year
bank deposits
Gas City
1932
$ 5,425.66
1933
8,878.11
1934
4,433.71
1935
2,855.29
1936
6,269.36
1937
8,047.58
1938
10,331.37
1939
13,421.92
1940
2,625.93
$6,848.19
1941
400.23
5,329.91
1942
1,543.52
1,809.42
1943
474.64
Respondent's *193 agents, in determining the income of Lloyd and William in the years in question, added the amount of the above deposits to their reported income. They also included in the income of William the interest credited to the savings account in the Twin City State Bank and dividends received from the Gas City Canning Company and allowed as additional deductions business expenses, depreciation, and other expenditures (including taxes, interest, and contributions), as follows: Additional income
Additional deductions
Business
Year
Interest
Dividends
expenses
Depreciation
Other
1932
$ 17.83
$1,202.90
$ 27.50
1933
5.45
1,258.01
43.10
1934
8.03
$772.54
1935
20.76
772.54
1936
5.14
958.85
1937
11.00
$1,800.00
3,194.67
681.82
1938
65.40
326.86
1939
92.62
3,863.45
115.03
1940
133.41
3,447.41
135.25
1941
72.66
1,197.00
1,479.62
45.00
1942
33.22
371.93
90.00
1943
25.63
266.71
90.00
In computing the net income of Lloyd, respondent allowed as additional deductions business expenses in the amounts of $494.50, $475.66, $464.04, $223.94, and $116.79 in the years 1939, 1940, 1941, 1942, and 1943, respectively, and contributions in the amount of $128.25 in the year 1939. Respondent also disallowed deductions claimed (including deductions for contributions, taxes, *194 interest, and travel expenses) for lack of substantiation, as follows: Year
William
Lloyd
1940
$ 16.51
$ 311.91
1941
301.73
332.96
1942
793.03
442.43
1943
1,216.34
1,572.16 None of the petitioners kept a set of books in any of the taxable years involved. Some cancelled checks were retained by both Lloyd and William. A portion of the cancelled checks retained by Lloyd were destroyed by high water in his basement. The revenue agent allowed as deductions for business expenses only amounts which could be substantiated by cancelled checks and which the agent was ninety per cent certain represented a business expense. Beginning in the fall of 1943 and continuing until sometime in 1944 Gas City was liquidated and its equipment, together with the equipment owned by Lloyd and William, was sold. In their respective returns for the year 1943 Lloyd reported $1,363.29 and William reported no amount as capital gain on the sale of their equipment. On September 15, 1944 William filed an "amended return" for 1943 and reported $4,903.69 as a short-term capital gain from the sale of his equipment. On his 1944 income tax return Lloyd reported an additional $3,625 as a short-term capital gain from the sale of his equipment. *195 In determining the deficiencies for 1943 respondent included in the taxable income of Lloyd and William net capital gains in the amounts of $3,690 and $3,057.50, respectively, representing the entire capital gains on the sale of their equipment. Respondent treated the gains from the sale of the equipment as a long-term capital gain, but did not allow any cost basis. In 1943 Lloyd and William had earned net income in the amounts of $8,445 and $7,010, respectively, and their net income, as determined by respondent, was $11,965.74 and $10,068.52, respectively. Respondent allowed each an earned income credit of only $300 in that year. In the years 1942 and 1943 William claimed dependency credits for his son and father. Lloyd claimed dependency credits for his son and mother-in-law in 1942 and a dependency credit for his mother-in-law in 1943. Respondent allowed only one dependency credit to William in 1942 and 1943 and one to Lloyd in 1942. Lloyd was not allowed a dependency credit in 1943. Lloyd had a son who entered the armed forces in the latter part of 1943. William and Helen had adopted a son in 1939 who drowned subsequent to 1943. William's father and Lloyd's mother-in-law lived *196 in or near Gas City. Both were around 70 years of age at that time, and William's father was in ill health. Respondent, in determining the deficiencies in the income tax of Helen, held that she received from Gas City as compensation for services: $918, $900, $929.50, $936, $1,093, $1,248, and $870 in the years 1933, 1934, 1935, 1936, 1937, 1938, and 1939, respectively, and received as interest on the savings account in the Twin City State Bank $12.13 in 1938 and $20.05 in 1939. The investigation of petitioners' returns began in late 1943 or early 1944. The 1943 income tax returns of Lloyd and William were prepared by others. Lloyd's original 1943 return and William's amended 1943 return were prepared by an accountant who was in possession of the books of Gas City. This accountant informed William of his gains on the sale of his equipment and William informed the revenue agent. Opinion The asserted deficiencies against Lloyd and William (hereinafter referred to as petitioners) for all years involved (except 1943) were computed by respondent by including in their income all unidentified bank deposits, all checks received from Gas City in excess of the amounts reported, dividends received, *197 and interest credited on a savings account. Respondent allowed as a deduction only amounts which could be substantiated by cancelled checks and which the revenue agent was ninety per cent certain represented business expenses or other allowable deductions. Petitioners admit the absence of records and do not dispute the propriety of respondent using the bank deposits method as a guide for determining the amount of income they actually received. Cf. Goe v. Commissioner (C.A. 3), 198 Fed. (2d) 851, certiorari denied 344 U.S. 897. They contend, however, that the bank deposits represented gross receipts and that their business expenses greatly exceeded the amounts allowed by respondent. Petitioners were operating under an agreement whereby they leased their trucks to Gas City and paid all expenses of operating the trucks in return for 80 per cent of the gross receipts or truck revenues. In the absence of records showing the expenses incurred in operating the trucks, petitioners were forced to rely upon expert testimony with respect to the maximum percentage of gross receipts a truck owner such as the petitioners, operating under an agreement like petitioners' agreement with Gas City, *198 could hope to net in the taxable years involved. On the basis of this testimony petitioners attempted to establish the maximum amount of adjusted gross income they could have earned in each of the taxable years. The fallacy in petitioners' position is that the bank deposits did not represent gross receipts. Petitioners' own witness testified that most of the supplies used in the operation of petitioners' trucks were purchased from Gas City and that, while sometimes these supplies were paid for by cash or check, the usual procedure was for Gas City to deduct the cost of the supplies from the amount due the petitioners as their share of the truck revenue. Therefore, as there is no evidence upon the basis of which we can determine or even approximate the amount of the truck revenues or gross receipts, the expert testimony, with respect to the percentage of gross receipts a similar truck owner could hope are husband and wife, and Lloyd and Helen are brother and sister. No Federal income tax returns were filed by William for the years 1932 to 1939, inclusive, by Helen for the years 1933 to 1939, inclusive, and by Lloyd for the year 1939. William and Lloyd filed individual returns for the *199 years 1940 to 1943, inclusive, with the collector of internal revenue for the district of Indiana. William did not sign his original return for the year 1943, and he did not file an "amended return" for that year until September 15, 1944. The Gas City Transfer Company (hereinafter referred to as Gas City) during the years in question was an Indiana corporation with its principal place of business in Gas City, Indiana. Gas City was engaged in the trucking business. It became a common carrier in 1938 or 1939. Prior to that time it was a contract carrier. The principal commodities carried were glass and paper. Walter Lowe, the father of Lloyd and Helen and the father-in-law of William, was the president of Gas City as well as its principal and, at least in 1943, its sole stockholder. Lloyd was the vice-president and Lola Lowe, the wife of Walter Lowe, was the treasurer. Helen was the secretary of Gas City until 1941, when she was succeeded by Martha May Morgan. In 1932 both Lloyd and William purchased certain truck-tractors and trailers from Gas City. During the years 1932 to 1943, inclusive, Lloyd owned three tractors and five trailers and William owned three tractors and three trailers. *200 These tractors and trailers were leased by Lloyd and William to Gas City. The lessors and lessee were to receive 80 per cent and 20 per cent of the gross profits, respectively, and the lessors were to pay the expenses of operating the units. Most of the supplies used in the operation of the tractor-trailers owned by Lloyd and William were purchased from Gas City. These supplies were sometimes paid for by cash or check, but the usual procedure was for Gas City to deduct the cost of the supplies from the amounts due Lloyd and William as their share of the truck revenues. In 1943 neither Lloyd nor William received rental income on their tractor-trailer units, but worked for Gas City on a straight salary basis. Lloyd and William did not file returns prior to 1940, and in the years 1940 through 1943 they reported no income from the operation of the tractor-trailer units. The only income reported in 1940, 1941, and 1942 were amounts which they denominated salaries received from Gas City, as follows: Year
Lloyd
William
1940
$2,397.36
$2,398.10
1941
2,945.00
2,869.40
1942
6,575.00
5,600.00
During the years in question William and Helen had a joint checking account and a joint savings account and Lloyd *201 had a checking account in the Twin City State Bank, Gas City, Indiana. William and Helen also had a joint savings account in the Marion National Bank at Marion, Indiana. Lloyd and William made deposits in their respective bank accounts of checks received from Gas City, in addition to the checks reported as salary, and made unidentified deposits as follows: Lloyd
Unidentified
Checks from
Year
bank deposits
Gas City
1939
$8,790.83
1940
163.00
$7,616.10 *
1941
475.00
6,408.83
1942
3,311.27
William
Unidentified
Checks from
Year
bank deposits
Gas City
1932
$ 5,425.66
1933
8,878.11
1934
4,433.71
1935
2,855.29
1936
6,269.36
1937
8,047.58
1938
10,331.37
1939
13,421.92
1940
2,625.93
$6,848.19
1941
400.23
5,329.91
1942
1,543.52
1,809.42
1943
474.64
Respondent's agents, in determining the income of Lloyd and William in the years in question, added the amount of the above deposits to their reported income. They also included in the income of William the interest credited to the savings account in the Twin City State Bank and dividends received from the Gas City Canning Company and allowed as additional deductions business expenses, depreciation, and other expenditures *202 (including taxes, interest, and contributions), as follows: Additional income
Additional deductions
Business
Year
Interest
Dividends
expenses
Depreciation
Other
1932
$ 17.83
$1,202.90
$ 27.50
1933
5.45
1,258.01
43.10
1934
8.03
$772.54
1935
20.76
772.54
1936
5.14
958.85
1937
11.00
$1,800.00
3,194.67
681.82
1938
65.40
326.86
1939
92.62
3,863.45
115.03
1940
133.41
3,447.41
135.25
1941
72.66
1,197.00
1,479.62
45.00
1942
33.22
371.93
90.00
1943
25.63
266.71
90.00
In computing the net income of Lloyd, respondent allowed as additional deductions business expenses in the amounts of $494.50, $475.66, $464.04, $223.94, and $116.79 in the years 1939, 1940, 1941, 1942, and 1943, respectively, and contributions in the amount of $128.25 in the year 1939. Respondent also disallowed deductions claimed (including deductions for contributions, taxes, interest, and travel expenses) for lack of substantiation, as follows: Year
William
Lloyd
1940
$ 16.51
$ 311.91
1941
301.73
332.96
1942
793.03
442.43
1943
1,216.34
1,572.16 None of the petitioners kept a set of books in any of the taxable years involved. Some cancelled checks were retained by both Lloyd and William. A portion of the cancelled checks retained by Lloyd were destroyed by high water in his basement. The revenue *203 agent allowed as deductions for business expenses only amounts which could be substantiated by cancelled checks and which the agent was ninety per cent certain represented a business expense. Beginning in the fall of 1943 and continuing until sometime in 1944 Gas City was liquidated and its equipment, together with the equipment owned by Lloyd and William, was sold. In their respective returns for the year 1943 Lloyd reported $1,363.29 and William reported no amount as capital gain on the sale of their equipment. On September 15, 1944 William filed an "amended return" for 1943 and reported $4,903.69 as a short-term capital gain from the sale of his equipment. On his 1944 income tax return Lloyd reported an additional $3,625 as a short-term capital gain from the sale of his equipment. In determining the deficiencies for 1943 respondent included in the taxable income of Lloyd and William net capital gains in the amounts of $3,690 and $3,057.50, respectively, representing the entire capital gains on the sale of their equipment. Respondent treated the gains from the sale of the equipment as a long-term capital gain, but did not allow any cost basis. In 1943 Lloyd and William had earned *204 net income in the amounts of $8,445 and $7,010, respectively, and their net income, as determined by respondent, was $11,965.74 and $10,068.52, respectively. Respondent allowed each an earned income credit of only $300 in that year. In the years 1942 and 1943 William claimed dependency credits for his son and father. Lloyd claimed dependency credits for his son and mother-in-law in 1942 and a dependency credit for his mother-in-law in 1943. Respondent allowed only one dependency credit to William in 1942 and 1943 and one to Lloyd in 1942. Lloyd was not allowed a dependency credit in 1943. Lloyd had a son who entered the armed forces in the latter part of 1943. William and Helen had adopted a son in 1939 who drowned subsequent to 1943. William's father and Lloyd's mother-in-law lived in or near Gas City. Both were around 70 years of age at that time, and William's father was in ill health. Respondent, in determining the deficiencies in the income tax of Helen, held that she received from Gas City as compensation for services: $918, $900, $929.50, $936, $1,093, $1,248, and $870 in the years 1933, 1934, 1935, 1936, 1937, 1938, and 1939, respectively, and received as interest on the savings *205 account in the Twin City State Bank $12.13 in 1938 and $20.05 in 1939. The investigation of petitioners' returns began in late 1943 or early 1944. The 1943 income tax returns of Lloyd and William were prepared by others. Lloyd's original 1943 return and William's amended 1943 return were prepared by an accountant who was in possession of the books of Gas City. This accountant informed William of his gains on the sale of his equipment and William informed the revenue agent. Opinion The asserted deficiencies against Lloyd and William (hereinafter referred to as petitioners) for all years involved (except 1943) were computed by respondent by including in their income all unidentified bank deposits, all checks received from Gas City in excess of the amounts reported, dividends received, and interest credited on a savings account. Respondent allowed as a deduction only amounts which could be substantiated by cancelled checks and which the revenue agent was ninety per cent certain represented business expenses or other allowable deductions. Petitioners admit the absence of records and do not dispute the propriety of respondent using the bank deposits method as a guide for determining the *206 amount of income they actually received. Cf. Goe v. Commissioner (C.A. 3), 198 Fed. (2d) 851, certiorari denied 344 U.S. 897. They contend, however, that the bank deposits represented gross receipts and that their business expenses greatly exceeded the amounts allowed by respondent. Petitioners were operating under an agreement whereby they leased their trucks to Gas City and paid all expenses of operating the trucks in return for 80 per cent of the gross receipts or truck revenues. In the absence of records showing the expenses incurred in operating the trucks, petitioners were forced to rely upon expert testimony with respect to the maximum percentage of gross receipts a truck owner such as the petitioners, operating under an agreement like petitioners' agreement with Gas City, could hope to net in the taxable years involved. On the basis of this testimony petitioners attempted to establish the maximum amount of adjusted gross income they could have earned in each of the taxable years. The fallacy in petitioners' position is that the bank deposits did not represent gross receipts. Petitioners' own witness testified that most of the supplies used in the operation of petitioners' *207 trucks were purchased from Gas City and that, while sometimes these supplies were paid for by cash or check, the usual procedure was for Gas City to deduct the cost of the supplies from the amount due the petitioners as their share of the truck revenue. Therefore, as there is no evidence upon the basis of which we can determine or even approximate the amount of the truck revenues or gross receipts, the expert testimony, with respect to the percentage of gross receipts a similar truck owner could hope to net, is of no assistance. Petitioners have not otherwise proven their right to deductions in excess of the amounts allowed and have not sustained their burden of proving that respondent's computation of their net income was erroneous. Petitioners contest respondent's disallowance of certain dependency credits for the years 1942 and 1943. However, petitioners have not sustained their burden of proving their right to the credits as they have not shown that the claimed dependents were dependent upon and received their chief support from them. Respondent determined that Lloyd and William sold their tractors and trailers in 1943 and included in their taxable income for that year net long-term *208 capital gains in the amounts of $3,690.82 and $3,057.50, respectively. Petitioners contend that the gains were realized in 1944, rather than in 1943, and that respondent erred in failing to allow any cost basis in computing the amount of the gains. As there is no competent evidence with respect to the amounts, if any, which petitioners paid for the tractors and trailers or upon the basis of which we can determine the year when the gains were realized, respondent's determination must be sustained. Respondent allowed each of the petitioners an earned income credit of only $300 in the year 1943, and both of the petitioners contend that they are entitled to an earned income credit in excess of that amount. Under section 25(a)(3) and (4) of the Internal Revenue Code of 1939, for the purpose of the normal tax with respect to taxable years beginning prior to January 1, 1944, an individual was entitled to an earned income credit of "10 per centum of the amount of the earned net income, but not in excess of 10 per centum of the amount of the net income" with certain limitations. Based upon the testimony of the accountant who prepared Lloyd's original return and William's amended return for *209 1943 using the books of Gas City, the returns themselves, and the determinations of respondent, we have found that the earned net income of Lloyd and William in that year was $8,445 and $7,010, respectively. Since their net income for that year, as determined by respondent, exceeded the amount of their earned net income, Lloyd and William are entitled to earned income credits in the amounts of $844.50 and $701, respectively. Respondent also determined deficiencies in the income tax of petitioner Helen Andes which have been contested; but as no evidence was offered to rebut the determination, it must be sustained. Respondent determined a 25 per cent addition to tax for failure to file a return against Lloyd for the year 1939, against Helen for each of the years 1932 to 1939, inclusive, and against William for each of the years 1932 to 1934 and 1936 to 1939, inclusive. Respondent also determined that William was liable for a similar addition to tax for the year 1943 under the provisions of section 291(a) of the Internal Revenue Code of 1939, [1] *211 because his original return for that year was unsigned and the "amended return" for 1943 was not filed until September 15, 1944. Failure to file *210 a properly executed return is equivalent to a failure to file a return. Theodore R. Plunkett, 41 B.T.A. 700, affd. (C.A. 1), 118 Fed. (2d) 644. Petitioners have contended that the above additions to tax were erroneously determined because no tax was due. But, as petitioners have failed to prove error in the deficiencies as determined, they have also failed to sustain their burden of proving that they are not liable for the additions to tax. Respondent has determined that at least part of the deficiency of each of the three petitioners in each taxable year was due to fraud with intent to evade tax, and accordingly seeks to impose the appropriate additions to tax. On this issue respondent has the burden of proof and must show by clear and convincing evidence that at least part of the deficiency was due to fraud with intent to evade tax. A mere preponderance of evidence is not sufficient. Henry S. Kerbaugh, 29 B.T.A. 1014, affd. (C.A. 1) 74 Fed. (2d) 749. Respondent has clearly failed to sustain his burden in the case of the petitioner Helen Andes. He determined that Helen received compensation from Gas City in the years 1933 to 1939, inclusive, ranging from $870 to $1,260.13, but has offered no evidence to support his determination. Respondent relies solely upon the argument that Helen "does not contest that she received the amounts included in her income"; but in her petition Helen has alleged "Respondent erred in *212 his determination of petitioner's net income for each of the years in question." Furthermore, under the Revenue Act of 1932 a husband and wife living together were not required to file a return unless their aggregate net income was $2,500 or over or their aggregate gross income was $5,000 or over (section 51(b)), and they were entitled to a personal exemption of $2,500 which could be taken by either or divided between them (section 25(c)). In order to find that Helen knew she might be liable for tax we would have to presume that she knew that the aggregate net income of both herself and her husband exceeded $2,500. We are unwilling to base a finding of fraud on such a presumption. Similarly, we find no proof that any part of the deficiencies of Lloyd and William for the year 1943 was due to fraud with intent to evade tax. The determination of fraud for that year is based entirely upon what respondent has determined to be a belated reporting of gains on the sale of their tractors and trailers. Respondent argues that the failure to report all of their gains on their original returns filed for 1943 was fraudulent and that because the revenue agent had begun an investigation of their tax *213 returns William reported his gains on an amended 1943 return filed six months after the due date for the original 1943 return and Lloyd reported additional gains on his 1944 return. However, the evidence indicates that the investigation had begun prior to the filing of the original 1943 returns. Also, the 1943 tax returns of both Lloyd and William were prepared by others. Lloyd's return, at least, was prepared by an accountant who had access to all of the records. This same accountant later discovered and informed William of his gains. William in turn informed the revenue agent. Furthermore, respondent has not shown when the gains were realized. While there is no evidence which would permit us to question respondent's determination, the record indicates that if evidence were presented there might be considerable doubt concerning whether the gains were properly taxable in 1943 rather than in 1944. On the basis of the present record, we are unable to find that the delay in reporting the gains was fraudulent. A more difficult question is presented by respondent's imposition of additions to tax for fraud against Lloyd and William in each of the taxable years involved prior to 1943. Respondent *214 has shown that William made unidentified bank deposits in each of the years 1932 through 1939 ranging from $2,855.29 to $13,421.92, although he did not file an income tax return in any of those years. In 1940, 1941, and 1942, William made unidentified bank deposits and received interest, dividends, and checks from Gas City, in excess of the amounts reported as salary, in the aggregate amounts of $9,607.53, $6,999.80, and $3,386.16, respectively. Lloyd made unidentified bank deposits in the amount of $8,790.83 in 1939 although he did not file a return for that year, and in 1940, 1941, and 1942 he made unidentified bank deposits and received checks from various trucking companies and from Gas City, in addition to the amounts reported as salary, in the aggregate amounts of $7,779.10, $6,883.83, and $3,311.27, respectively. While there is no showing that all of the above amounts represent taxable income and the record is not entirely clear that there is no duplication between the unidentified bank deposits and the checks received from Gas City and other sources, petitioners apparently do not question the fact that the amounts shown represent gross income. Their primary complaint is that *215 their allowable deductions greatly exceeded the amounts allowed by respondent. To prove fraud respondent has relied solely upon an attempt to show that petitioners' net income was substantially in excess of their allowable exemptions or, in 1940, 1941, and 1942, the amounts reported. To meet his burden respondent is not required to prove the exact amount of net income received, but must only show that petitioners failed to report a substantial amount of net income. Normally respondent relies upon the net worth and expenditures method which is a reasonably accurate gauge of the net income received. Here, however, respondent has employed the bank deposits method which, in the case of a taxpayer in a trade or business, is more indicative of gross receitps than it is of net income. Where respondent resorts to the latter method, in order to affirmatively prove fraud he must also prove that the taxpayer's allowable deductions do not exceed an amount which, when deducted from gross income, leaves a substantial amount of unreported net income. This was not established by clear and convincing evidence in the instant case. It is true that a number of business expenses had been deducted from *216 the amounts which petitioners received and which respondent included in their taxable income, and it is also true that respondent allowed a number of additional deductions in computing their net income. However, respondent's allowance of a substantial amount of business expenses or other deductions in one year and none in the next, his allowance of only amounts which petitioners could substantiate by cancelled checks even though a part of petitioners' expenses were paid in cash and undoubtedly a large portion of their cancelled checks were destroyed by high water or were lost in the passage of time, and his allowance of only amounts which the revenue agent was ninety per cent certain represented a business expense or other allowable deduction raise a strong possibility that petitioners incurred other business expenses and were entitled to other deductions substantially in excess of the amounts allowed. It may be that respondent has allowed petitioners substantially all of the deductions to which they were entitled, and certainly petitioners have not affirmatively proven that such was not the case. Also, we may strongly suspect that petitioners received a substantial amount of unreported *217 net income. Nevertheless, respondent has not proven this latter fact by clear and convincing evidence; and, therefore we are unable to find that the deficiency of either Lloyd or William in any of the taxable years was due to fraud with intent to evade tax. Since respondent has not shown that additions to tax for the year 1942 are applicable by reason of fraud, petitioners are entitled to the benefits of section 6 of the Current Tax Payment Act of 1943. [2]
Decisions will be entered under Rule 50. Footnotes
*. The tax upon which the addition to tax for 1943 is based was paid in September 1944 upon the filing of an amended return.↩
*. Includes "checks received from various trucking companies" in the amount of $329.47.↩
*. Includes "checks received from various trucking companies" in the amount of $329.47.↩
1. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1).
2. 57 Stat. 126, 145.↩